UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KIMBERLY MCCAIN,

   Plaintiff,

v.            Civil Action No. 13-1589 (GK)

DISTRICT OF COLUMBIA, et al.,

   Defendants.

## MEMORANDUM OPINION

Plaintiff Kimberly McCain ("Plaintiff" or "McCain") brings this action against the District of Columbia ("the District") and Metropolitan Police Department ("MPD") Officers Kelvin King ("Officer King") and Richard Moats ("Officer Moats") (collectively, "Defendants") for negligence, gross negligence, negligent supervision, intentional infliction of emotional distress, and violations of her constitutional rights pursuant to 42 U.S.C. § 1983.

This matter is before the Court on Defendants' Motion to Dismiss [Dkt. No. 4]. Upon consideration of the Motion, Plaintiff's Opposition [Dkt. No. 7], Defendants' Reply [Dkt. No. 8], Plaintiff's Supplemental Opposition [Dkt. No. 10], Defendants' Response to the Supplemental Opposition [Dkt. No. 11], Defendants' Notice to the Court dated August 14, 2014 [Dkt. No. 14], and the entire record herein, and for the reasons

stated below, Defendants' Motion shall be **granted in part** and **denied in part**.

I. BACKGROUND

A. Factual Background[1]

On July 12, 2009, Plaintiff was arrested in the District of Columbia for drunk driving. Amended Complaint ("Am. Compl.") ¶¶ 8-9.[2] After failing a series of field sobriety tests, she was taken to "a police substation" where she was twice administered a breath alcohol test using a machine known as an Intoxilyzer 5000EN ("Intoxilyzer"). Id. ¶¶ 8-10. The results of Plaintiff's Intoxilyzer tests were 0.34 and 0.37 grams per 210 liters of breath, respectively, indicating that her breath

---

[1] The facts are taken from the Amended Complaint [Dkt. No. 1-2], documents incorporated by reference in the Amended Complaint, and facts of which the Court may take judicial notice. See Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.") (citation omitted). In particular, the Court takes judicial notice of the docket in Plaintiff's criminal case, District of Columbia v. McCain, No. 2009 CTF 016013 (D.C. Super. Ct. July 23, 2009) ("McCain Crim. Dkt."). See Rogers v. District of Columbia, 880 F. Supp. 2d 163, 166 (D.D.C. 2012) ("[D]ocket sheets are public records of which the Court can take judicial notice[.]") (citing Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). A copy of the McCain criminal docket is attached as Exhibit 1 to Defendants' August 14, 2014, Notice [Dkt. No. 14].

[2] The Amended Complaint erroneously states that Plaintiff was arrested on December 7, 2008, but the parties agree that she was actually arrested on July 12, 2009. See Pl.'s Opp'n at 1.

alcohol level was more than four times the legal limit.  Id. ¶
11.³

The District charged Plaintiff with three criminal offenses: (1) Driving While Intoxicated ("DWI"), in violation of D.C. Code § 50-2201.05(b)(1)(A)(i)(I); (2) Driving Under the Influence ("DUI"), in violation of D.C. Code 50-2201.05(b)(1)(A)(i)(II); and (3) Operating While Impaired ("OWI"), in violation of D.C. Code § 50-2201.05(b)(2)(A). See Am. Compl. ¶ 16; see also McCain Crim. Dkt. at entries dated July 23, 2009.

Under the impaired driving laws in effect at the time of Plaintiff's arrest, the DUI and OWI charges required the prosecution to prove that, as a result of alcohol consumption, she was "less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to [operate a vehicle] with safety to [her]self or the public." Karamychev v. District of Columbia, 772 A.2d 806, 812-13 (D.C. 2001) (citation omitted); see also D.C. Code §§ 50-2201.05(b)(1)(A)(i)(II); 50-2201.05(b)(2) (2009). The DWI charge, by contrast, required the prosecution to prove only that

---

³ D.C. Code § 50-2201.05, which was the operative impaired driving provision at the time of Plaintiff's arrest, prohibited driving with an alcohol level at or exceeding .08 grams per 210 liters of breath. See D.C. Code § 50-2201.05(b)(1)(A)(i)(I) (2009).

-3-

Plaintiff's alcohol levels exceeded .08 grams per 210 liters of breath. See id. § 50-2201.05(b)(1)(A)(i)(I).

Plaintiff was advised by her attorney that her Intoxilyzer results could not be successfully challenged in court, and, consequently, on October 1, 2009, she pled guilty to the DWI charge. Am. Compl. ¶ 17; see also McCain Crim. Dkt. at entries dated Oct. 1, 2009. On October 8, 2009, she was sentenced to ten mandatory days in jail, a 28-day residential alcohol treatment program, $400 in fees and fines, and one year of supervised probation. Id. ¶ 18; see also McCain Crim. Dkt. at entry dated Oct. 8, 2009.[4]

On July 26, 2010, after serving her jail time and satisfying all of the terms and conditions of her sentence, Plaintiff received a notice from the District of Columbia Office of the Attorney General ("OAG notice") advising her that the Intoxilyzer machine used to test her breath alcohol levels on July 12, 2009, had not been properly maintained and calibrated. Am. Compl. ¶¶ 19, 23. In particular, the OAG notice appears to have alerted Plaintiff, as she alleges in this case, that Defendant Officer King, who was responsible for maintaining the Intoxilyzer machines for the Metropolitan Police Department, used "out-dated, deteriorated, and uncertified simulator

---

[4] As a result of her conviction, Plaintiff was also terminated from her employment as an Emergency Technician with the District of Columbia. Am. Compl. ¶ 22.

solutions" to calibrate the machines and failed to test the machines every three months, in accordance with the manufacturer's specifications. Id. ¶¶ 38-41. Plaintiff alleges that the "forensically invalid and unscientific procedures" used by Officer King to calibrate and maintain the machines "resulted in inaccurate, forensically invalid and inflated Intoxilyzer readings, which rendered [her] breath test results invalid and inaccurate." Id. ¶¶ 40, 45.

In addition, she claims that the District knew, at least two years prior to issuance of the OAG notice, that its Intoxilyzer machines were not properly maintained but failed to "take any corrective action" until February 26, 2010, when it "began advising judges that MPD lacked confidence in its breath test results." Id. ¶¶ 52, 53, 56.

On December 6, 2013, Plaintiff filed a motion in the Superior Court to withdraw her guilty plea and set aside the DWI conviction. See McCain Crim. Dkt. at entry dated Dec. 6, 2013. On February 21, 2014, the Superior Court granted that motion and reinstated all of the original criminal charges, including the DUI and OWI charges. See Pl.'s Supp. Opp'n, Ex. 1 (Sup. Ct. Order dated Feb. 21, 2014) [Dkt. No. 10]. On June 24, 2014, the reinstated criminal case proceeded to a bench trial before Magistrate Judge Rainey Brandt. See McCain Crim. Dkt. at entries dated June 24, 2014. On July 24, 2014, at the

conclusion of that trial, the DWI and OWI charges were dismissed by the prosecution nolle prosequi and Magistrate Judge Brandt found Plaintiff guilty on the sole remaining charge of DUI. See McCain Crim. Dkt. at entries dated July 24, 2014.

### B. Procedural Background

On July 24, 2013, exactly one year before the conclusion of Plaintiff's reinstated criminal case, she filed this civil action in the Superior Court of the District of Columbia. On October 17, 2013, Defendants removed the case to this Court [Dkt. No. 1] and on October 24, 2013, they filed the instant Motion to Dismiss [Dkt. No. 4]. On November 14, 2013, Plaintiff filed her Opposition [Dkt. No. 7],[5] and on November 25, 2013, Defendants filed their Reply [Dkt. No. 8].

Thereafter, on February 24, 2014, Plaintiff filed a Supplemental Opposition with information as to the status of her motion to withdraw her guilty plea in the Superior Court [Dkt. No. 10 at 1-5]. On March 6, 2014, the District filed a Response to Plaintiff's Supplemental Opposition [Dkt. No. 11] and, the same day, Plaintiff filed a Reply to the District's Response

---

[5] On December 4, 2013, Plaintiff also filed a Request for Oral Argument [Dkt. No. 9], on the asserted basis that Defendants' Reply brief "raised matters unaddressed" in her initial Opposition. Because Plaintiff was subsequently permitted to file both a Supplemental Opposition [Dkt. No. 10] and a Reply to the District's Response to her Supplemental Opposition [Dkt. No. 12], and because the Court concludes that resolution of the instant Motion is appropriate without oral argument, Plaintiff's Request is **denied.**

[Dkt. No. 12]. On August 14, 2014, Defendants filed a Notice regarding the final disposition of Plaintiff's criminal case [Dkt. No. 14 at 2].

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success . . . [,] must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [, and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted). A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557) (alteration in Iqbal).

## III. ANALYSIS

Defendants seek dismissal of Plaintiff's Amended Complaint on three grounds. First, they argue that her claims are untimely. Second, they contend that Counts I-III, each of which assert common law tort claims, must be dismissed because Plaintiff failed to comply with the District's mandatory notice statute, D.C. Code § 12-309. Third, they argue that Count IV, which asserts a cause of action under 42 U.S.C. § 1983, constitutes a collateral attack on Plaintiff's criminal conviction and, therefore, is barred by the Supreme Court's decision in <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994).

### A. Counts I-III Shall Be Dismissed for Failure to Satisfy D.C. Code § 12-309

The parties agree that Plaintiff's common law tort claims in Counts I-III[6] are subject to D.C. Code § 12-309, which provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in the regular course of duty, is a sufficient notice under this section.

---

[6] Count I is a claim for negligence and gross negligence against all Defendants. Am. Compl. ¶¶ 62-73. Count II is a claim for negligent supervision against the District. <u>Id.</u> ¶¶ 74-80. Count III is a claim for intentional infliction of emotional distress against Officer King and Officer Moats. <u>Id.</u> ¶¶ 81-84.

-8-

D.C. Code § 12-309.

The notice requirements in Section 12-309 "serve several important purposes: they (1) permit the District of Columbia to conduct an early investigation into the facts and circumstances surrounding a claim, (2) protect the District of Columbia against unreasonable claims, and (3) encourage prompt settlement of meritorious claims." Owens v. Dist. of Columbia, 993 A.2d 1085, 1088 (D.C. 2010) (citations omitted). The Court of Appeals for the District of Columbia has therefore repeatedly held that compliance with Section 12-309 is a mandatory "condition precedent to filing suit against the District[,]" and "is to be construed narrowly against claimants." Id. (citations and quotation marks omitted).[7]

Plaintiff concedes that she never filed a written notice of her claims with the Mayor of the District of Columbia. Pl.'s Opp'n at 7-8. She relies instead on the final sentence of Section 12-309, which states that "[a] report in writing by the Metropolitan Police Department, in the regular course of duty, is a sufficient notice under this section." D.C. Code § 12-309. She points to two types of MPD "reports" she contends provided notice of her claims: (1) the police reports prepared in

---

[7] Section 12-309 does not, however, apply to claims under 42 U.S.C. § 1983. See Brown v. United States, 742 F.2d 1498, 1509-10 (D.C. Cir. 1984) (en banc), cert. denied, 471 U.S. 1073 (1985).

connection with her July 12, 2009, arrest for drunk driving, and (2) reports allegedly prepared by MPD in connection with its investigation into the Intoxilyzer problems in 2010. Pl.'s Opp'n at 7.

It is well-established that the mere "existence of a police report . . . 'does not necessarily mean that the District has received the actual notice which § 12-309 contemplates.'" Martin v. District of Columbia, 720 F. Supp. 2d 19, 25 (D.D.C. 2010) (citing Allen v. District of Columbia, 533 A.2d 1259, 1262 (D.C. 1987)). This is especially true where, as here, a plaintiff's civil case asserts claims such as false arrest or malicious prosecution. See Allen, 533 A.2d at 1263 (holding that "a police report of an arrest is presumptively devoid of any notice of a potential claim of injury or damage from false arrest . . . or negligence").

A police report will satisfy Section 12-309 only if, among other things, it actually "'disclose[s] both the factual cause of the [plaintiff's] injury and a reasonable basis for anticipating legal action as a consequence.'" Jones v. District of Columbia, 879 F. Supp. 2d 69, 77 (D.D.C. 2012) (quoting Washington v. District of Columbia, 429 A.2d 1362, 1366 (1981)). In addition, the report must contain "enough information for the District to conduct a prompt, properly focused investigation of [the plaintiff's] claim." Id. at 78.

Plaintiff has not attached to her pleadings the police report prepared in connection with her July 12, 2009, arrest for drunk driving. Furthermore, neither the Amended Complaint nor the documents incorporated by reference in that Complaint provide any basis to conclude that such report disclosed the "factual cause" of the injury asserted in this case – i.e., Officer King's alleged defective calibration and maintenance of the Intoxilyzer machine used to test Plaintiff's alcohol levels. Therefore, the police report issued in connection with Plaintiff's arrest does not satisfy Section 12-309.

Plaintiff has also failed to attach to her pleadings any reports prepared by MPD in connection with its investigation into the Intoxilyzer problems. The only evidence she has presented regarding MPD's investigation is a series of emails among MPD officials in February and March 2010, which discuss the Intoxilyzer problems generally and refer to a "summary of the [breath test] problems" prepared by an unidentified author "for [certain MPD officials'] use in meetings[.]" See Pl.'s Supp. Opp'n Ex. 2. Although these emails show that MPD was generally aware of the Intoxilyzer problem, they do not establish that MPD or any of its employees or agents ever prepared a report specifically identifying the facts giving rise to Plaintiff's case. Therefore, they also fail to satisfy Section 12-309. Jones, 879 F. Supp. 2d at 77-78.

Finally, Plaintiff argues that "information was sufficiently available to the District to allow [it] to identify the . . . tainted prosecutions." Pl.'s Opp'n at 7. But neither "sufficiently available" information nor "actual notice" define compliance with Section 12-309. As the Court of Appeals for the District of Columbia has held, "[f]ailure of a formal notice or a police report to meet the required specificity would bar the suit even if [information in the District's possession] actually prompted the city to make an investigation." Campbell v. District of Columbia, 568 A.2d 1076, 1079 (D.C. 1990) (citing Washington v. District of Columbia, 429 A.2d 1362, 1367 (D.C. 1981)); see also Owens, 993 A.2d at 1089 (D.C. 2010) ("Whether the District of Columbia had 'actual notice of a potential claim is not an appropriate consideration under section 12-309.'") (citing Chidel v. Hubbard, 840 A.2d 689, 695 (D.C. 2004)).[8]

In sum, the law is clear: Section 12-309 is satisfied only by a specific type of MPD report – one "that covers all the requisite information, easily found in one place." Jenkins v. District of Columbia, 379 A.2d 1177, 1178 (D.C. 1977).

---

[8] Enders v. District of Columbia, 4 A.3d 457, 467-68 (D.C. 2010), on which Plaintiff relies, is inapposite. The plaintiff in that case did not rely on a police report to provide the requisite notice but rather sent a timely notice to the District indicating his intent to file a false arrest claim. It is undisputed that Plaintiff never sent such a notice to the District.

Plaintiff has not shown that such a report exists. Consequently, she has not demonstrated compliance with Section 12-309 and her common law tort claims in Counts I-III must be **dismissed**.[9]

**B. Count IV Shall Not Be Dismissed**

In Count IV, Plaintiff brings a claim under 42 U.S.C. § 1983 for violation of her constitutional rights. Specifically, she alleges that "[i]f evidence from a properly certified Intoxilyzer had been utilized, [she] would not have been subject[ed] to and convicted of an offense with a mandatory jail term." Am. Compl. ¶ 90. She contends that Defendants' use of the allegedly invalid test results to convict her of the DWI charge violated her rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution. Id. ¶¶ 86-87.

Defendants agree that this claim, unlike the common law tort claims in Counts I-III, is not subject to the notice requirements in Section 12-309.[10] They contend, however, that it is barred by the Supreme Court's 1994 decision in Heck v.

---

[9] Having so concluded, the Court shall not address Defendants' alternative argument that Counts I-III are barred by the statute of limitations.

[10] Defendants originally challenged this claim as untimely. However, they now concede that "Plaintiff's claim under § 1983 . . . is not time-barred, as Plaintiff only recently was permitted to withdraw her guilty plea." Defs.' Resp. to Pl.'s Supp. Opp'n at 5.

Humphrey, which held that, "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" Heck, 512 U.S. at 486-87.[11]

At the time Defendants filed their Motion to Dismiss in October 2013, Plaintiff's DWI conviction had not yet been vacated and therefore, a malicious prosecution claim did not yet exist in her favor. However, on February 21, 2014, her conviction was vacated by the Superior Court, and on July 24, 2014, the District dismissed the DWI charge nolle prosequi at the conclusion of the bench trial. Consequently, the criminal charge on which Plaintiff was originally convicted has now been

---

[11] There is a split of authority, and our Court of Appeals has not yet addressed, whether Heck applies to civil plaintiffs who are no longer in state custody and therefore do not have access to habeas corpus relief. See, e.g., Molina-Aviles v. District of Columbia, 797 F. Supp. 2d 1, 5 & n.5 (D.D.C. 2011) (noting circuit split and citing cases). It is unnecessary for the Court to take a position on this issue because, even assuming Heck applies to this case, as discussed below, it does not bar Plaintiff's claim at the pleading stage.

"declared invalid by a state tribunal authorized to make such determination." Heck, 512 U.S. at 487.

Defendants argue that these circumstances are not sufficient under Heck because although "the DWI charge [was] dropped by the government, . . . Plaintiff was subsequently convicted of DUI, an offense that arose from the same facts and circumstances as the original charge." Defs.' Aug. 14 Notice at 2. They fail, however, to cite any binding authority holding that conviction of a different offense after retrial necessarily precludes a Section 1983 plaintiff from showing that her earlier conviction has been "invalidated" within the meaning of Heck. As the Second Circuit recently observed:

> Heck does not automatically bar a § 1983 claim simply because the processes of the criminal justice system did not end up in the plaintiff's favor. A plaintiff need not prove that any conviction stemming from an incident with the police has been invalidated, only a conviction that could not be reconciled with the claims of his civil action.

Poventud v. City of New York, 750 F.3d 121, 132 (2d Cir. 2014) (emphasis in original) (quoting VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir. 2006)); see also Jackson v. Barnes, 749 F.3d 755, 760 (9th Cir. 2014) ("[U]nder certain circumstances a plaintiff's § 1983 claim is not Heck-barred despite the existence of an outstanding criminal conviction against him.").

Defendants concede that the DWI charge on which Plaintiff was originally convicted required proof of different evidence

-15-

than the DUI charge on which she was later convicted. See Mot. at 11 ("Plaintiffs' DWI conviction, as opposed to a DUI conviction or OWI conviction, rested solely on breath test scores[.]") (emphasis added); see also id. at 13 ("[A] DWI conviction is solely dependent on the breath test scores."). Furthermore, the evidence on which the now-vacated DWI conviction was, in Defendants' words, "solely dependent" is the very evidence Plaintiff claims was tainted by Defendants' alleged misconduct. Consequently, the DUI conviction can be reconciled with Plaintiff's claim of malicious prosecution regarding the DWI charge.

In sum, the record is sufficient to raise a claim that Plaintiff's DWI charge was dismissed because the District lacked competent breath test evidence, and that such conviction has therefore been "invalidated" within the meaning of Heck. See Molina-Aviles, 797 F. Supp. 2d at 7 (denying motion to dismiss claims of plaintiffs who had withdrawn guilty pleas to DWI charges where such charges were awaiting retrial or subsequently dismissed).[12]

---

[12] The cases cited by Defendants are either inapposite or support the Court's holding that Plaintiff has stated a claim under Heck. In Brandley v. Keeshan, 64 F.3d 196 (5th Cir. 1995), abrogated on other grounds, Wallace v. Kato, 549 U.S. 384, 387-92 (2007), the Court of Appeals for the Fifth Circuit held that a "reversal of a conviction and remand for new trial is not, in and of itself, a termination" sufficient to support a claim under Heck, but simultaneously acknowledged that "an order of

Defendants' motion to dismiss Count IV under Heck shall be **denied**.

**IV. CONCLUSION**

For the foregoing reasons, the District's Motion is **granted** as to Counts I, II, and II, and **denied** as to Count IV. An Order shall accompany this Memorandum Opinion.

October 6, 2014

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF

---

dismissal reflecting an affirmative decision not to prosecute" a claim may suffice. Id. at 199. In Harris v. District of Columbia, 696 F. Supp. 2d 123 (D.D.C. 2010), this Court held that the plaintiff had not stated a common law claim for malicious prosecution because, although he alleged that his criminal charges had been dismissed, he failed to state any reason for such dismissal or show it was with prejudice. Id. at 133-34. By contrast, the dismissal in this case occurred after a bench trial, and the pleadings support the inference that such dismissal resulted from a lack of reliable breath test evidence.