**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KIMBERLY MCCAIN,

            *Plaintiff*,

    v.

DISTRICT OF COLUMBIA, et al.,

            *Defendants*.

Civil Action No. 13-1589 (RDM)

## <u>MEMORANDUM OPINION</u>

Plaintiff Kimberly McCain pleaded guilty to driving while intoxicated based on evidence that the District of Columbia later admitted was flawed. Three years after receiving notice of the flawed evidence, she commenced this action against the District of Columbia and Officers Kevin King and Richard Moats (collectively "Defendants"), eventually alleging claims for negligence, gross negligence, negligent supervision, intentional infliction of emotional distress, and violation of her constitutional rights pursuant to 42 U.S.C. § 1983. Judge Kessler of this Court has previously dismissed McCain's three D.C.-law claims on the ground that she failed to provide the Mayor of the District of Columbia with timely notice of those claims, as required by D.C. Code section 12-309. Dkt. 15 (Oct. 6, 2015 Order). Judge Kessler, however, denied Defendants' motion to dismiss McCain's fourth claim, which alleged a federal cause of action and was thus not subject to the District's notification requirement. *Id.*

Two motions are presently before the Court. First, Defendants move for summary judgment on the remainder of the action on grounds of judicial estoppel. Dkt. 30. In particular, they note that, prior to commencing this suit, McCain filed for bankruptcy and received a discharge of her debts, yet she failed to disclose the claims asserted in this action as contingent

assets, as she was required to do.  Having represented to the bankruptcy court that she did not possess any "contingent and unliquidated claims of [any] nature," Dkt. 30-6 at 10, the District asserts that McCain is estopped from now taking a contrary position before this Court.  Second, McCain seeks reconsideration of Judge Kessler's decision dismissing her D.C.-law claims, arguing that the notice requirement contained in D.C. Code section 12-309 was satisfied because the Metropolitan Police Department prepared a report that provide sufficient notice of McCain's claims.  Dkt. 17.

For the reasons explained below, the Court concludes that it lacks jurisdiction over this matter.  It will accordingly dismiss the amended complaint and deny both pending motions as moot.

## I. BACKGROUND

McCain was arrested on July 12, 2009, for drunk driving after failing a series of field sobriety tests.  *See* Dkt. 16 at 2.  She was taken to a "police substation," where she was twice tested for alcohol using a breathalyzer machine called the Intoxilyzer 5000EN ("Intoxilyzer"). *Id.*  The first test showed that McCain had 0.34 grams of alcohol per 210 liters of breath; the second test indicated she had 0.37 grams.  *Id.*  Both results were more than four times the legal limit.  *Id.* at 2–3.  The District charged her with three criminal offenses:  driving while intoxicated ("DWI"); driving under the influence ("DUI"); and operating while impaired ("OWI").  *Id.* at 3.  Her attorney advised her that she could not successfully challenge the results of the Intoxilyzer test in court, and so McCain pleaded guilty to the DWI charge—the most serious of the three charges—on October 1, 2009.  *Id.* at 4.  She was sentenced a week later to ten days in jail, twenty-eight days in a residential alcohol treatment program, $400 in fees and fines, and one year of supervised probation.  *Id.*  She was later fired from her job with the D.C.

Department of Fire and Emergency Medical Services, allegedly as a direct result of her guilty plea.  Dkt. 1-2 at 15 (Amended Compl. ¶ 80).

On or around July 26, 2010, after McCain had served her sentence, she and her attorney Charles Szlenker received a letter from the District's Office of the Attorney General ("OAG letter") providing notice that the Intoxilyzer machine used to test her breath alcohol level had not been properly maintained or calibrated.  *See* Dkt. 30-5 (letter); *see also* Dkt. 7 at 11 (McCain Decl. ¶ 2) (acknowledging receipt of letter).  The letter explained that the District discovered the problem in February 2010, and that, once informed, the Office of the Attorney General "immediately stopped relying upon the [the] Intoxilyzer results until the scope and cause of the problem were determined."  Dkt. 30-5 at 1.  According to the letter, a "calibration procedure" undertaken in September 2008 by Officer Kelvin King, the longtime head of the Alcohol Enforcement Program for the District's Metropolitan Police Department ("MPD"), had led to the instrument's deficiencies.  *Id.*  The letter did not admit any wrongdoing, asserting instead that Officer King "worked closely with the manufacturer who provided assistance and instructions as to how to calibrate the instrument"; that he "received detailed instructions from the manufacturer"; and that he serviced the machine "with no malicious intent to purposefully affect the instruments."  *Id.*  The letter also represented that the District maintained a log of test results for the Intoxilyzer and that this "documentation" has "always been made available to defendants when requested."  *Id.* at 2.  The letter concluded by noting that the District had decided to use a different device to assess impaired driving going forward and that OAG had decided to stop relying on results from MPD Intoxilyzers—even those obtained before the calibration issue or after the instruments were re-certified.  *Id.*  The OAG notice did not explain to McCain what

options she had in light of this revelation, but simply stated that the notice was being provided to Szlenker so he could "take whatever action [he] deemed appropriate." *Id.* at 1.

Years passed after McCain received this letter. In the meantime, she filed a petition for voluntary Chapter 7 bankruptcy on December 21, 2012, in the U.S. Bankruptcy Court for the District of Maryland. *See* Dkt. 30-6. In the Summary of Schedules, she recorded $161,526.00 in total assets and $176,415.97 in total liabilities. *Id.* at 6. Relevant here, "Schedule B" of the petition instructed McCain to list "contingent and unliquidated claims of every nature" not already disclosed, and McCain indicated, under the penalty of perjury, that she had none. *Id.* at 10, 34. On June 3, 2013, the bankruptcy court issued an Order Granting Discharge of Debtor. *See* Dkt. 30-7. Three days later, the bankruptcy court issued its final decree that the estate had been "fully administered" and closed the case. *See* Dkt. 30-8.

On July 24, 2013—less than two months after the bankruptcy case closed—McCain filed suit in D.C. Superior Court against the District of Columbia, Officer King, and Officer Richard Moats (the officer who administered her breath alcohol test), seeking damages for harm related to her arrest and conviction for drinking and driving. *See* Dkt. 1-2 at 19–30 (Compl.). The decision to file had been made entirely by McCain's current attorney, Frederic Schwartz, Jr., whom McCain had retained to pursue litigation relating to the loss of her job. Dkt. 39-3 at 1 (McCain Decl. ¶¶ 6, 8); Dkt. 39-4 at 1–2 (Schwartz Decl. ¶¶ 1, 9). Strikingly, Schwartz did not consult with McCain prior to filing on her behalf, and McCain remained ignorant of this case until November 14, 2013, some four months after filing. Dkt. 39-3 at 1 (McCain Decl. ¶ 8); Dkt. 39-4 at 1–2 (Schwartz Decl. ¶¶ 9, 10). Schwartz explains that, although he had known about the OAG letter to McCain, he postponed investigating the case until the week before the statute of limitations was set to expire. Dkt. 39-4 at 1 (Schwartz Decl. ¶¶ 3–5). Only then did he review

the complaints filed by "similarly situated plaintiffs" and realize "the enormity of the error and the culpability of the defendants in relation to [McCain]'s conviction," which convinced him to bring the case. *Id.* at 1–2 (Schwartz Decl. ¶¶ 3–6). Schwartz further explains that he was unaware of McCain's bankruptcy proceedings "until [he was] advised by counsel for the defendants on the day their motion for summary judgment was filed." *Id.* (Schwartz Decl. ¶ 2).

On September 20, 2013, Schwartz filed an amended complaint on McCain's behalf. Dkt. 1 at 2; *see* Dkt. 1-2 at 4–18 (Am. Compl.). The amended complaint contained four counts. First, it alleged that both the District and the two officer defendants negligently "fail[ed] to ensure, as required by statute, that the breath test equipment used by the MPD to generate evidence for use in DWI prosecutions was properly calibrated and tested." Dkt. 1-2 at 13 (Am. Compl. ¶ 63). Second, it alleged that the District was liable for negligent supervision because it "fail[ed] to properly train and/or supervise Officer King and Officer Moats in the calibration, testing and use of the District's breath test machines." *Id.* at 14 (Am. Compl. ¶ 75). Third, it alleged that the two officers intentionally inflicted emotional distress upon McCain by providing District prosecutors with false information that the officers knew or should have known would lead to a DWI conviction. *Id.* at 15–16 (Am. Compl. ¶¶ 81–84). Fourth, it alleged that all three Defendants infringed McCain's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, in violation of 42 U.S.C. § 1983. *Id.* at 16–17 (Am. Compl. ¶¶ 85–95). Defendants removed the case to this Court on October 17, 2013, *see* Dkt. 1, and filed a timely motion to dismiss, *see* Dkt. 4.

On December 6, 2015, while the motion to dismiss was pending, McCain filed a motion in the Superior Court to withdraw her guilty plea to DWI and to set aside the conviction. *See* Dkt. 16 at 5. The Superior Court granted that motion, and reinstated all three original charges

against her.  *Id.*  After a bench trial, the prosecution dropped the DWI and OUI charges, and a magistrate judge found McCain guilty of DUI on July 24, 2014.  *Id.* at 5–6.

On October 6, 2014, Judge Kessler granted in part and denied in part Defendants' motion to dismiss.  *Id.* at 17.  With respect to the first three counts of the complaint, each of which alleged a common law tort, she concluded that McCain had failed to comply with D.C. Code section 12-309, which requires plaintiffs, as a prerequisite to suit, to provide notice to the Mayor's office within six months of an alleged injury.  *Id.* at 8.  Of particular relevance here, Judge Kessler rejected McCain's argument that her case fell within the statute's carve-out, which provides that "[a] report in writing by the [MPD], in the regular course of duty is a sufficient notice under this section," D.C. Code § 12-309; *see* Dkt. 16 at 9–13.  It is that aspect of Judge Kessler's decision that McCain now asks the Court to reconsider.  *See* Dkt. 17.  As to the fourth count, alleging an action under § 1983, Judge Kessler denied the District's motion to dismiss.  *See id.* Dkt. 16 at 13–17.  All parties agreed that the D.C. Code's notice provision does not apply to actions under § 1983, and Judge Kessler rejected Defendants' argument that the claim was barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See* Dkt. 16 at 13–17.

The case was reassigned to the undersigned Judge on November 18, 2014.  In the midst of discovery, Defendants learned of McCain's bankruptcy case, and now move for summary judgment on that basis.  In particular, they argue that McCain's claims are barred by the doctrine of judicial estoppel because she failed to disclose in her bankruptcy petition or during those proceedings, as she was required to do, that she had a potential civil action.

## II. ANALYSIS

Although not raised by either party, the Court has "an independent duty to satisfy [itself] of [its] Article III jurisdiction" before considering the pending motions. *Elec. Privacy Info. Cent. v. FAA*, 821 F.3d 39, 41 n.2 (D.C. Cir. 2016). That inquiry requires that the Court consider whether the plaintiff can meet the "irreducible constitutional minimum" requirements of Article III standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), by identifying, among other things, some cognizable basis for asserting "a personal stake in the outcome of the controversy," *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (internal quotation mark omitted) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). In the present context, this question overlaps with—but is distinct from—the issues raised by Defendants' judicial estoppel argument.

As explained above, McCain's claims to relief, if any, arose in 2009, when she was prosecuted and convicted of driving while intoxicated based on admittedly flawed evidence. She was told about the flawed evidence approximately one year later, when she and her attorney received notification from the Office of the D.C. Attorney General. Although her current attorney asserts that he only "discovered the enormity of the [MPD's] error and the culpability of the defendants in relation to [McCain]'s conviction" shortly before he filed suit in 2013, Dkt. 39-4 at 1 (Schwartz Decl. ¶¶ 3–4), there is no dispute that McCain's causes of action, if any, existed at the time she filed her Chapter 7 bankruptcy petition on December 21, 2012, Dkt. 30-6. Nor is there any dispute that McCain was required to disclose in that petition *all* of her assets, including "contingent and unliquidated claims of every nature," *id.* at 10, and that she failed to disclose her present claims. In briefing Defendants' motion for summary judgment, the parties devote most of their attention to whether McCain deliberately omitted the required information, whether she was otherwise at fault, and whether the Court should exercise its discretion to dismiss the

amended complaint.  None of those questions, however, bears on the standing inquiry.  That inquiry, instead, turns on whether any claims that may exist against Defendants belong to McCain or to the bankruptcy estate.

As the Court of Appeals has observed, "[i]n the context of [Chapter 7] bankruptcy proceedings, it is well understood that 'a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed.'"  *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010) (quoting *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam)).  As a result, "[g]enerally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it."  *Id.* (alteration in original) (quoting *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004)).  Significantly, the transfer of all such interests to the bankruptcy estate occurs *regardless* of whether the debtor identifies the pre-petition cause of action on any of the required schedules; indeed, the failure of a debtor "to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate."  *Parker*, 365 F.3d at 1272; *see also Kane*, 535 F.3d at 385; *Vreugdenhill v. Navistar Int'l Transp. Co.*, 950 F.2d 524, 525–26 (8th Cir. 1991); *Mobility Sys. & Equip. Co. v. United States*, 51 Fed. Cl. 233, 236 (Fed. Cl. 2001).  Thus, upon the commencement of a Chapter 7 proceeding, "all legal or equitable interests of the debtor in property" become interests of the estate, 11 U.S.C. § 541(a)(1)—including undisclosed, potential causes of action like McCain's.

The estate's interest in this lawsuit, moreover, did not revert back to McCain when the bankruptcy proceedings concluded.  Here, again, the bankruptcy code is explicit.  In the case of a "scheduled" claim (that is, a claim which *has* been disclosed to the bankruptcy court), the trustee

may knowingly decline to pursue it, at which point the cause of action may be treated as "abandoned to the debtor."  11 U.S.C. § 554(a),(c).  Under those circumstances, the interest reverts to the debtor, who may then have standing to pursue the pre-petition claim in post-petition litigation.  *Moses*, 606 F.3d at 795.  But, "[u]nless the [bankruptcy] court orders otherwise, property of the estate that is not abandoned" in a manner prescribed in § 554 "and that is not administered in the [bankruptcy proceeding] remains property of the estate."  § 554(d).  Thus, because unscheduled claims are neither "abandoned" nor "administered," they remain with the estate even after the close of the case.  *Parker*, 365 F.3d at 1272.

   This does not mean that an unscheduled cause of action is necessarily lost when the bankruptcy is administered and the case is closed.  Rather, "if a debtor fails to schedule an asset, and the trustee later discovers it, the trustee may [seek to] reopen the bankruptcy case to administer the asset on behalf of the creditors."  *Kane*, 535 F.3d at 385; 3 *Collier on Bankruptcy* ¶ 350.03[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("[I]t is clear that assets that are not properly disclosed on the schedules are not abandoned and remain property of the estate that can be administered if the case is reopened.").

   In light of these principles, the Court concludes that McCain lacks standing and that, unless the bankruptcy trustee seeks to reopen the bankruptcy case and seeks leave to be substituted herein as the real party in interest, the case must be dismissed for want of jurisdiction.  All of the claims asserted in this case arose before McCain filed her bankruptcy petition and thus, to the extent they are of any value, they became property of the bankruptcy estate.  There is no evidence, moreover, that the trustee abandoned those claims, and, indeed, McCain's contention that both she and her lawyer were unaware that she had a basis to bring suit until after the bankruptcy was administered would be difficult to square with the contention that the trustee

9

was aware of those same claims and knowingly abandoned them.  The equitable considerations that McCain has raised in opposition to Defendants' judicial estoppel defense do not affect this conclusion.  A failure of diligence in investigating whether Defendants' conduct provided a basis for suit has nothing to do with whether the relevant causes of action belong to McCain or are now the property of the bankruptcy estate.

In order to provide the bankruptcy trustee with an opportunity to determine whether there is a legal basis and sufficient cause to seek to reopen the bankruptcy estate and to seek leave to be substituted as the real party in interest in this action, *see Parker*, 365 F.3d at 1270, the Court will stay its decision for thirty days.  The Court will also direct that McCain promptly provide a copy of this decision to the bankruptcy trustee.  Finally, in light of the Court's conclusion that it lacks jurisdiction, the Court will deny both pending motions as moot.

## CONCLUSION

For the reasons stated above, the Court will dismiss the amended complaint for lack of jurisdiction and will deny Defendants' motion for summary judgment, Dkt. 30, and McCain's motion for reconsideration, Dkt. 17, as moot.  A separate order will issue.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  September 9, 2016